IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| KIMBERLY A. HEEMAN, | ) | Civil Case No. 2:13-cv-3607-TMC-MGB |
| | ) | |
| **Claimant,** | ) | |
| **v.** | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| CAROLYN W. COLVIN, | ) | |
| | ) | |
| **Acting Commissioner of** | ) | |
| **Social Security,** | ) | |
| _____ | ) | |

Claimant Kimberly Heeman, through counsel, brought this action to obtain judicial review of a post-remand unfavorable final administrative decision denying benefits on her application for a period of disability and disability benefits ("DIB") pursuant to Title II of the Social Security Act ("SSA"). See Section 205(g) of the SSA, as amended, 42 U.S.C. § 405(g). This matter was referred to the Magistrate Judge for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and 28 U.S.C. § 636(b)(1)(B). Having carefully considered the parties' briefs, the administrative record, and applicable authority, the undersigned recommends that the Commissioner's final decision be **<u>affirmed</u>**, based on the following proposed findings of fact and conclusions of law:

**I.  Relevant Statutory Law**

The SSA provides that disability benefits are available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). The "claimant for disability benefits bears the burden of proving a disability." *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981). For purposes of the statute, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). As the Commissioner correctly indicates, the Social Security regulations set forth a five-step sequential process that considers a claimant's age, education, and work experience in addition to [the claimant's] medical condition. 20 C.F.R. §§ 404.1520(a), 416.920(a)). The Fourth Circuit Court of Appeals has succinctly stated that, to be entitled to benefits, "[t]he claimant (1) must not be engaged in 'substantial gainful activity,' i.e., currently working; and (2) must have a 'severe' impairment that (3) meets or exceeds the 'listings' of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity ["RFC"] to (4) perform [the claimant's] past work or (5) any other work." *Albright v. Comm'r*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The claimant bears the burden of production and persuasion through the fourth step. "If the claimant reaches step five, the burden shifts to the government" to provide evidence that other work exists in significant numbers in the national economy that the claimant can do. *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*). In the present case, after remand, the ALJ determined that the claimant was not disabled at the fifth step of the sequential process.

## II.   Factual Background and Procedural History

The relevant facts have been extensively set forth in the ALJ's decision and the parties' briefs, and are summarized here: Claimant was born January 26, 1959 (a "younger" person on the date last insured), communicates in English, has at least a high school education (with another two years at "TEC," earning a certificate in "Computer Science"), is literate, has a driver's license, is married, and lives with her husband and adult daughter. (AR 154-157).[1] She

---

[1] Claimant's "mental/vocational" consultant indicates in his April 2007 report that claimant lives with her husband and his 17 year old son. (AR 273). In her May 2008 disability application, claimant indicated she lives with her husband and her adult daughter. (AR 155).

served in the Navy 1976-1982. She has past relevant work experience in sales for a hotel, as an office manager, and as a waitress. (AR 20, citing Ex. 16E; AR 583). She was last employed for two months in retail sales at Home Depot. She indicates she injured her back on August 28, 2005 when she attempted to catch a falling five-gallon can of paint.[2]

The claimant was off work with back pain. After taking a routine MRI of the lumbar spine in September 2005, Dr. Zakiya Steadman, M.D., diagnosed grade 1 spondylolisthesis at the L5-S1 level resulting in mild to moderate stenosis. (AR 228-229).[3] He observed severe degenerative disc disease, but indicated that the "nerve root does not appear compressed" and "no disc herniation evident." (*Id*.). On October 20, 2005, she went to Dr. Howard Brilliant, M.D., complaining of back pain. He noted "negative straight leg raising test" and "no neurological deficits." (AR 244). He wrote that she had been referred to therapy and given a TENS unit, and should continue with this. He indicated "Return in three weeks. [If] she doesn't improve will consider spine surgeon. No work till then." (*Id*.).

On November 1, 2005, the claimant went to Dr. John Johnson, M.D., for her Worker's Compensation claim. She was given two steroidal injections in December 2005 and one in January 2006, but she reported that these gave her little relief. This doctor indicated in April 2006, that "conservative treatment" was not alleviating symptoms, and he referred her to a surgeon for consultation. (AR 299). On June 20, 2006, Dr. Donald Johnson, M.D., ("Dr. Johnson") performed surgery to fuse the vertebrae at the L5-S1 level.

---

[2] For accuracy's sake, although the claimant's brief refers to a "lifting" injury, the claimant has repeatedly indicated that she had actually attempted to "catch" a falling paint can. (AR 238 "caught can;" AR 745 "original injury at work when 5 gallon bucket of paint fell and patient attempted to catch it").

[3] Spondylolisthesis is generally described as the forward slippage of one vertebra over another. According to the common classification system used to quantify the slip, grade I defines a slip from 0 to 25%, grade II from 26 to 50%, grade III from 51 to 75%, and grade IV from 76 to 100%. See www.ncbi.nlm.nih.gov (citing Meyerding H W. Spondylolisthesis. J Bone Joint Surg Am. 1931;13:39–48). Fusion surgery is commonly performed to prevent excessive motion at the level of slip.

After initial recuperation, she underwent a course of physical therapy, which included walking on the treadmill and riding a stationary bicycle. Dr. Johnson's progress notes in August 2006 indicate "x-rays look great. Her fusion is solidly healed. We have a good note from her physical therapist. She is progressing well and overall very pleased." (AR 303). His notes in September 2006 indicate "she is continuing to do well … x-rays look good." (AR 304). His notes in October 2006 again reflect that her "fusion looks good" and that she was steadily improving with therapy. (AR 305). His notes in November 2006 indicate that although the claimant had a functional capacity evaluation ("FCE") in October 2006, she was still in physical therapy and ought to have another FCE "done at the completion of physical therapy." (AR 306).[4] He indicated "x-rays continue to look very good … she has had a reasonably good surgical outcome." (AR 307). On January 4, 2007, Dr. Johnson indicated that claimant had reached maximum medical improvement. After noting that insurance would not allow a second FCE, he relied on the October 2006 FCE which indicated claimant was capable of "light work" at that time. (AR 308). He wrote "I will place her on a permanent 20 pound lifting restriction with no repetitive bending or lifting" and assigned her a 23% impairment rating, cautioning that this is "not to be confused with disability." (*Id.*).

In February 2007, Dr. Johnson's notes indicate that claimant "returns today, apparently for more restrictions. Her FCE I thought was quite self-explanatory. I would place her with sitting and standing restrictions of no more than one hour. I think she can bend occasionally but should do no repetitive bending.[5] Her lifting restrictions per her FCE." (AR 309). She had no

---

[4] An "FCE" is a comprehensive evaluation of a person's physical abilities at that time. Although claimant has the burden to prove disability, she did not furnish the 25-page FCE report, her progress notes, or her subsequent discharge summary (which indicated she had improved even more since the FCE) for consideration by the ALJ in 2009. These documents have now been filed in the record and were considered by the ALJ in 2013. (AR 743-812).

[5] Claimant had reported to her physical therapists that she could sit for two hours.

more visits to her surgeon until her "1 year follow up" in June 2007. He wrote "she has been doing well … x-rays look good … fusion is well-healed." (AR 310). He indicated she needed only intermittent follow-up visits with her family physician.[6]

The claimant's "date last insured" then passed on June 30, 2007.[7] Several months later in August 2007, while caring for her fiancée (now husband) who had a stroke, she went to one of Dr. Johnson's colleagues at the Southern Spine Institute, Dr. Robert Richardson, M.D., for a "flare" of back pain. (AR 311 noting "she apparently was doing fairly well but at this point has had a recent flare-up now that she is having to take care of her fiancée").[8] He ordered a new lumbar MRI, which indicated "no significant bulge or protrusion" at L5/S1 and "remaining lumbar alignment and marrow unremarkable." (AR 313). His next note in January 2008 indicates that claimant had a steroidal injection but had not noticed any improvement. (AR 312). He continued her medication, and the record reflects no further notes from him.

On March 21, 2008, the claimant filed an application for DIB benefits, and on April 11, 2008, an application for Supplemental Security Income ("SSI") benefits. She alleged disability due to lower back injury, depression, and anxiety, with an onset date of August 27, 2005. (AR 109).[9] The applications were denied initially and on reconsideration. She appealed the DIB

---

[6] In April 2007, claimant obtained a "mental and vocational evaluation" from a non-treating psychologist Robert Brabham, PhD, who opined that she had a "depressive order, NOS" and "generalized anxiety disorder" (AR 557, citing Ex. 5F). His report did not reflect any diagnostic testing and merely indicates that claimant had "described herself as being depressed." (AR 274). Claimant's counsel then obtained a check-box-form from Dr. Johnson indicating he "agreed" with Brabham. (AR 280).

[7] In order to be eligible for disability insurance benefits, a claimant must demonstrate a disability on or before the last date on which she was insured. 42 U.S.C. § 423(a)(1)(A).

[8] This aggravation of claimant's back occurred over one month after June 30, 2007, the "date last insured." She testified that her husband was ambulatory, was able to feed himself, and that she did not have "to bathe him or anything like that," but that she would prepare his meals. (AR 39-40).

[9] With respect to depression and anxiety, claimant had been prescribed Prozac and Ambien, but had sought no counseling or mental health treatment by a mental health specialist, and had never been psychiatrically hospitalized. (AR 653 Q: Have you had any formal counseling? A: No.).

decision, but not the SSI decision. (DE# 27 at 2, fn. 1, pointing out that SSI is no longer at issue). She settled her Worker's Compensation claim for $90,000.00 in lump sum. (AR 110).

Upon request, Administrative Law Judge Richard Vogel ("ALJ") held a hearing on October 2, 2009, at which the claimant (represented by counsel) and a vocational expert ("VE") testified. (AR 23-47, Hrg. Tr.). At the hearing and in her application, the claimant indicated that her activities of daily living include cooking, reading, gardening/yardwork, shopping, watching television, taking care of her husband, managing their household, driving short distances, taking herself to doctor appointments, feeding and watering pets, and light chores such as laundry, ironing, and emptying the dishwasher (AR 16, 31, 38-40, 154-158). She testified she must stop to rest after doing chores for half an hour. (AR 38, Q: How long can you sustain activity, whether it's just in housework or being out in your garden, before you stop? A: About a half an hour and then I'll sit down or lay down.). She is able to take care of her own hygiene and manage her own funds. (AR 155).

After considering all the evidence, including the treating surgeon's opinion that claimant could perform light work, the ALJ determined that she retained the RFC to perform light work within certain restrictions. (AR 19). The VE testified that claimant could perform representative jobs at the light exertional level, such as parts assembler and examiner (over 650,000 jobs nationally) and jobs at the sedentary exertional level, such as table worker and weigher/inspector (over 460,000 jobs nationally). (AR 21). On November 6, 2009, the ALJ issued a decision, finding that claimant was not disabled from the alleged onset date through June 30, 2007, the last date insured. (AR 12-22). On October 26, 2010, the Appeals Council denied review.

The claimant requested judicial review, and the matter was referred to Magistrate Judge K. D. West, who entered a Report and Recommendation on June 6, 2012. (AR 609-631).

Magistrate West observed that although Dr. Johnson had considered the claimant's October 2006 FCE and physical therapy records (AR 630), those documents were not in the administrative record. Dr. Johnson had relied on the October 2006 FCE when he wrote his January 2007 opinion about claimant's functional abilities and impairment rating (for claimant's Worker's Compensation case). Magistrate West indicated that "the court cannot determine whether [the doctor's reliance] was appropriate without having the opportunity to review that FCE or other records of [claimant's] physical therapy." (AR 627-628). Magistrate West noted that Dr. Johnson had indicated that he would have liked a final post-therapy FCE before giving an opinion about claimant's post-therapy functional abilities.[10] A second FCE evaluation at the conclusion of therapy was not obtained because insurance would not pay for it. (AR 812). Magistrate West recommended remand for further development of the record and "for the ALJ to more fully consider the opinions of all treating sources, especially those of Dr. Johnson" in light of the additional evidence. (AR 629).

This Court agreed, and on July 17, 2012, remanded the case pursuant to Sentence Four for further proceedings. (AR 607-608, Order). The Appeals Council vacated the ALJ's decision and sent the case back to the ALJ, who further developed the record.[11] Additional medical records, including the October 2006 FCE, physical therapy progress notes through November 2006, and claimant's therapy discharge summary, were obtained. (AR 743-812).

The FCE indicated that claimant had normal posture, no limp, no guarding in gait, could sit for 2 hours with minimal standing breaks, and that on an occasional basis, could lift 17 lbs.

---

[10] An additional FCE at the conclusion of physical therapy would have accounted for any additional improvement in claimant's functional abilities.

[11] The Social Security Administration's Hearings, Appeals, and Litigation Law Manual ("HALLEX") indicates that, upon court remand, the Appeals Council will vacate the ALJ's prior decision and that the ALJ will then consider all issues de novo. HALLEX I–2–8–18.

from floor to shoulder safely, carry up to 29 lbs. over a distance of 30 feet safely, and push and pull up to 70 lbs. over a distance of 30 feet safely. (AR 745-446, 756). The FCE concluded that she had sufficient strength and endurance to perform light work. (AR 745). The FCE recommended that claimant "may benefit from continued physical therapy treatment to decrease pain, increase extremity strength, and increase tolerance to functional activities." (AR 766).

She then had additional therapy in November and continued to improve. The progress notes from November 8, 2006 indicate "overall patient has made excellent progress with significant improvement in trunk ROM and strength." (AR 810). The progress notes from November 10, 2006 indicate "patient has done excellent with PT." (AR 811). Her discharge summary indicates she was able to "full squat and return to standing 10 times," was able to walk 20 minutes on the treadmill on Level 2-3," was able to "ride a recumbent bike for ten minutes," had "trunk strength within normal limits all planes," and that her "trunk flexion" had improved from an initial 55% to a present 92%, which was "normal." (AR 809). The therapist indicated that claimant would benefit from aquatic exercise and working out at a gym. (*Id*.).

After remand, claimant's counsel obtained a February 25, 2013 letter from Dr. Johnson (who had not treated claimant since 2007), opining that he thought claimant would have an "extremely difficult time with employability." (AR 814). Counsel also submitted a one-page form that he had sent to Dr. Johnson, asking him to check several boxes regarding claimant's "need to take unscheduled breaks" and "be absent from her job." (AR 816-817).

On March 8, 2013, the ALJ held a second hearing, at which the claimant and a VE appeared and testified. (AR 574-87, Hrg. Tr.). Despite her surgeon's progress notes indicating a successful operation and despite the physical therapy notes indicating she had reported significant and steady improvement, claimant testified that her surgery had "aggravated" her

back condition and that she was "worse off" afterwards. (AR 581). After considering the evidence, including the testimony and additional medical records, the ALJ found that claimant had "severe" impairments due to status post lumbar fusion, depression, and anxiety, but that these impairments (singly or in combination) did not meet or medically equal any Listing. (AR 556-58).[12] The ALJ found that claimant could not do her past relevant work, but retained the RC to perform unskilled "sedentary" work within the following limitations: no crawling or climbing; the opportunity to sit or stand at will; no exposure to industrial hazards; a low stress setting, defined as work requiring no more than occasional decision-making and changes in the work setting; and no exposure to the general public. (AR 559).[13] He found that her subjective complaints were not fully credible to the extent they were inconsistent with her RFC. In response to hypothetical questions, the VE testified that the claimant could perform representative occupations at the sedentary level, such as surveillance system monitor, weight tester, and addresser (over 9,000 jobs in South Carolina, and over 600,000 jobs nationally). (AR 585).

On April 11, 2013, the ALJ issued a new decision. (AR 553-68). He found that jobs existed in significant numbers that the claimant could have performed and that she was not disabled from the alleged onset date through the date last insured. The Appeals Council denied review on November 4, 2013. The ALJ's 2013 decision is the final decision of the Commissioner. The claimant filed for judicial review on December 30, 2013. She requested, and was granted, three extensions of time. She filed her supporting brief on November 17, 2014.

---

[12] The ALJ noted that claimant took medication, but had not sought any treatment for alleged depression and anxiety from a mental health specialist. Nonetheless, he gave her the "benefit of the doubt" in finding such impairments. (AR 562). Functionally, he noted that claimant had acknowledged in May 2008 that these impairments did not affect her ability to follow instructions, get along with authority figures, or handles stress or changes in routine. (*Id.*). State agency reviewer Laura Cutler, PhD, indicated claimant had only "mild" limitations. (AR 341). Claimant does not argue that she met any Listing.

[13] Sedentary work involves "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a-b). "Occasionally" means "occurring from very little up to one-third of the time." SSR 83–10.

After the Commissioner responded, claimant was granted further extension of time. She filed her reply on January 30, 2015. This matter is now fully briefed and ripe for review.

## III.  Standard of Review

The Court's review of the Commissioner's final decision is limited to: (1) whether substantial evidence supports such decision; and (2) whether the Commissioner applied the correct legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Perales*, 402 U.S. at 401). Substantial evidence is defined as "more than a mere scintilla but less than a preponderance." *Smith v. Chater*, 99 F.3d 635, 637–38 (4th Cir. 1996).

The reviewing court may not re-weigh the evidence, make credibility determinations, or substitute its judgment for that of the Commissioner, so long as that decision is supported by substantial evidence. *Hays*, 907 F.2d at 1456. It is the duty of the Commissioner, not the courts, to make findings of fact and resolve conflicts in the evidence. *Id*. at 1456; *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979) ("the court does not find facts or try the case *de novo* when reviewing disability determinations"); *Seacrist v. Weinberger*, 538 F.2d 1054, 1056-57 (4th Cir. 1976) (same). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the court would decide the case differently. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

## IV.  Arguments Presented

The claimant argues that the ALJ: 1) did not properly re-evaluate "all aspects of the opinions of the treating and examining sources" and therefore did not comply with the remand

order; 2) did not properly weigh the treating physicians' opinions regarding the nature and severity of her impairments; 3) erred in his RFC findings; 4) erred "in relying upon presumed facts outside of the record to support his findings regarding the weight to which Dr. Donald Johnson's treating source medical opinions were entitled;" 5) erred in his credibility finding; 6) did not comply with "the requirements of SSR 00-4p with regard to the 'low stress setting' limitation included in his hypothetical question;" 7) did not include all of the claimant's limitations (as established by the record) in the hypothetical question to the vocation expert ("VE"), and thus, the ALJ erred in relying on the VE's testimony; and 8) erred in finding claimant was "not disabled" because the Commissioner "failed to carry its burden of proof at step five." (DE# 25 at 1-2). The claimant asks the Court for an immediate award of benefits.

The Commissioner responds that: 1) substantial evidence supports the ALJ's RFC findings; 2) the ALJ fully considered Dr. D. Johnson's opinion; 3) substantial evidence supports the ALJ's credibility findings; 4) substantial evidence supports the ALJ's reliance on the VE's testimony that the claimant could perform sedentary jobs; 5) there was no conflict between the VE's testimony and the DOT; and 6) the claimant is not entitled to an immediate award of benefits. (DE# 27)

## V.  Analysis

### Issues 1-5: Whether the RFC determination is supported by substantial evidence

These issues all concern the RFC determination, including the ALJ's evaluation of the claimant's credibility and the medical opinion evidence. Claimant essentially repeats the same arguments in several issues. The Commissioner appropriately considers them together.

#### The ALJ's credibility determination

The ALJ found that the "claimant's medically determinable mental impairments could reasonably be expected to cause some of the alleged symptoms; however the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not fully credible to the extent they are inconsistent" with the RFC assessment. (AR 560).

The claimant challenges the ALJ's credibility determination, alleging generally that it did not comply with the requirements of SSR 96–7p. (DE# 25 at 25-27). That Ruling explains that if the ALJ does not find a claimant's statements to be fully credible, the ALJ must cite specific reasons based on the evidence. SSR 96–7p ("Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements"), 1996 WL 374186 at *1-3); *and see, e.g., Dean v. Barnhart*, 421 F.Supp.2d 898, 906 (D.S.C.2006) (discussing this requirement). Factors used to assess the credibility of an individual's subjective symptoms and allegations of pain include: the individual's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; any medication taken to alleviate pain or symptoms; treatment and other measures used to relieve symptoms; and any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3); SSR 96–7p. There is no requirement that the ALJ state specific findings on each and every factor. *See. e.g., Epperson v. Astrue*, 2012 WL 3862717, *4 (E.D.N.C.); *Hutton v. Colvin*, 2015 WL 3757204, *38 (N.D.W.Va.).

Review of the 2013 decision confirms that the ALJ addressed these factors and sufficiently explained the basis for his credibility determination. As the Commissioner asserts, the ALJ discussed the medical evidence at length, including the surgeon's opinion that the fusion surgery was successful and that claimant had steadily improved with physical therapy. (AR 561).

The ALJ appropriately discounted the claimant's credibility because: 1) objective medical evidence did not substantiate her alleged degree of limitation; 2) she provided inconsistent statements; 3) there was objective evidence of exaggeration of pain and limitations; and 4) her daily activities were inconsistent with her claims of disabling pain and functional limitations.

For example, the ALJ indicated that, after only a few months of post-surgery physical therapy, the claimant reported that she was "feeling really good" and that she had improved by 75% from when she started therapy. (AR 561-62, 564, citing AR 802-3, 810-12). The treating surgeon's progress notes indicated that claimant was very pleased with her surgery, that her fusion was well-healed, and that her physical abilities were steadily improving with therapy. The ALJ noted that the claimant had nonetheless alleged she had "worsened" after surgery. (AR 560; 581 testifying that surgery had "aggravated" her back condition and that she was "worse off" afterwards). The ALJ had the opportunity to observe the claimant's demeanor, and his observations concerning her credibility are given great weight. *Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984).

The ALJ pointed to objective evidence of exaggeration and symptom magnification in the medical records regarding the claimant's complaints. The ALJ observed that during the FCE, the physical therapist administered the Waddell Inappropriate Symptoms Questionnaire. The results indicated the possibility that claimant was exaggerating her allegations of pain. (AR 560-561, citing AR 763-64). The ALJ correctly cites the FCE result that claimant "presented with 3 of 7 inappropriate (anatomically unreasonable) responses," which indicated "inappropriate illness behavior" and suggested that the claimant "can do more" than she stated or perceived. (AR 561).[14] Tendency to exaggerate is a legitimate factor in determining credibility. *Kyle v. Secretary*

---

[14] In another test of "maximum voluntary effort," the FCE found that claimant's "scores demonstrate 8 coefficients of variation above the permissible cut-points … this is suggestive of less than full effort during testing." (AR 760).

*of HHS*, 449 F.2d 489, 490 (4th Cir. 1971) (affirming denial of benefits where claimant exaggerated symptoms); *Hutchinson v. Astrue*, 2012 WL 1267887, *8 (M.D.N.C.) ("the issue … is not whether Plaintiff's pain exists; it undoubtedly does and the ALJ so acknowledged…[the issue is whether the ALJ considered the record as a whole and properly determined] that the extent and limiting effects of that pain were not as great as [she] claimed").

The ALJ also considered the claimant's activities of daily living and observed that despite alleging functional limitations of disabling severity, the claimant was able to engage in a wide range of activities. (AR 560). The ALJ noted that claimant indicated she could "walk one mile" (AR 159, 560), and the physical therapy notes indicated that claimant "walked for exercise" and was able to walk 20 minutes on the treadmill at level 2-3 (AR 769, 809). Claimant alleged she could only lift ten lbs., but the ALJ observed that "claimant's own reports to the state agency indicate she can lift 20 pounds." (AR 560).[15] Such evidence supports the ALJ's finding that the claimant's functional limitations were not as severe as alleged. *See Gross v. Heckler*, 785 F.2d 1163, 1166 (4th Cir. 1986); *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) (claimant's daily activities were inconsistent with claim that she was unable to perform basic work abilities). The ALJ discussed the claimant's reports to the state agency and her activities of daily living, and found that these were "inconsistent with her allegations of such significant functional limitations." (AR 560).

The ALJ noted that after claimant's January 2007 check-up with Dr. Johnson, she had no further care until her one-year follow up visit in June 2007, at which time the surgeon reported that she was "doing well" and needed only intermittent follow-up care with her family physician (AR

---

[15] The FCE found that claimant could occasionally lift up to 17 lbs. from floor to shoulder level safely and carry up to 29 lbs. over a distance of 30 feet safely (AR 746, 765). In any event, the ALJ limited her to sedentary work (which requires lifting no more than 10 pounds) and imposed postural restrictions.

562, citing AR 310). Under SSA regulations, a claimant's allegations "may be less credible if the level or frequency of treatment is inconsistent with the level of complaints." SSR No. 96–7p, at *7; *Mickles v. Shalala*, 29 F.3d 918, 930 (4th Cir. 1994) ("unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility").

It is the ALJ's duty to weigh all the evidence and make credibility determinations. *Hays*, 907 F.2d at 1456. The ALJ properly relied upon the record as a whole when assessing the credibility of the claimant's subjective complaints. "It is the province of the [ALJ], and not the courts, to make credibility determinations." *Mickles*, 29 F.3d at 929. The ALJ appropriately considered the claimant's subjective claims and adequately explained his credibility findings. Such determination complied with Ruling 96–7p and is supported by substantial evidence.

**The ALJ's consideration of the treating opinions**

To be given controlling weight, a treating source's opinion must be well-supported by medical signs and laboratory findings and consistent with the other substantial evidence of record. 20 C.F.R. § 416.927(c)(2). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590; *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The regulations recognize that the nature and extent of the treatment relationship may also affect the weight afforded by an ALJ. 20 C.F.R. § 416.927(c). Opinions by physicians regarding the ultimate issue of whether a claimant is disabled within the meaning of the SSA are not given controlling weight because the decision on that issue is reserved to the Commissioner alone. *Id.* at § 416.927(d).

The claimant contends that the ALJ's 2013 decision did not satisfy the remand order and argues that the ALJ was required to "fully discuss" the treating opinions. (DE# 25 at 20-25; AR 32 at 1-3). The Commissioner responds that the ALJ fully considered and discussed the medical opinions and all of claimant's limitations that were found credible under the evidence, and that substantial evidence supports the RFC finding. (DE# 27 at 2-17).

Review of the ALJ's 2013 decision reflects that the ALJ fully considered and discussed the treating opinions and medical evidence, including the post-remand evidence. (AR 553-568). The ALJ appropriately indicated he was assigning less weight to the brief notes of Drs. John F. Johnson and Howard Brilliant. He found that their opinions "relate to a limited window of time and predate the claimant's spinal fusion." (AR 563). As their medical treatment was prior to referral of the claimant to a specialist for surgery, the ALJ appropriately indicated he was giving them less weight than Dr. Johnson's opinions after surgery and completion of physical therapy.

The ALJ extensively discussed the evidence of the claimant's successful surgery, including the surgeon's progress notes. The ALJ also discussed the post-remand evidence of the physical therapy progress notes and the October 2006 FCE.[16] He observed that after the claimant's follow-up visit with Dr. Johnson in January 2007, the claimant had no more care until August 2007 (after her insured last date had expired) when she returned to the SE Spine Institute complaining of a "flare" of pain after taking care of her fiancée who had a stroke. (AR 562, citing Ex. 9F). *See Caces v. Comm'r*, 560 Fed.Appx. 936, 938 (11th Cir. 2014) (affirming denial of benefits in spinal fusion case, and holding that although claimant's condition had worsened

---

[16]Physical therapists are considered "other sources" under the regulations. 20 CFR § 404.1513(d) ("In addition to evidence from the acceptable medical sources … we may also use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work. Other sources include … therapists).

after the date last insured, the record did not establish he was disabled before such date). As the Commissioner observes, the main issue is the ALJ's consideration of Dr. Johnson's opinions.

The ALJ cited the correct law about giving great weight to treating opinions that are well-supported, and then indicated that Dr. Johnson's January/February 2007 opinion was supported by the evidence. He gave "little weight" to three subsequent statements elicited from Dr. Johnson. (AR 562-64, citing Ex. 6F, 26F, 27F). The ALJ accurately described Dr. Johnson's 2013 letter and the two check-box forms provided to him by claimant's counsel.[17] The ALJ carefully considered such evidence and even indicated on the record that he was reading Dr. Johnson's 2013 letter for "a second time" at the hearing. (AR 582-83).

Dr. Johnson's 2013 letter indicated that he did not think the FCE accurately depicted the claimant's abilities in October 2006 because she had reported some increased pain after the FCE. (AR 814). The ALJ specifically discussed the fact that after the three-hour evaluation, claimant reported that her back pain increased for 24 hours, but then returned to its pre-test level. (AR 580-581). The ALJ observed that in October 2006, the claimant had indicated her "pain" was only a 1 on a scale of 1 to 10, with 1 as the low end of the scale. (AR 561, citing AR 802). The ALJ also pointed out that "although the evaluation was performed on October 10, 2006, the report was completed on October 11, 2006 and contains the next day follow up information." (AR 561, citing Ex. 24F). In other words, although Dr. Johnson purportedly based his 2013 letter (modifying his 2007 opinion) on the fact that claimant reported some "pain" after the FCE evaluation, this information was included in the FCE report and was available to him in 2007. As the ALJ noted, claimant had continued to improve in her November 2006 therapy.

---

[17] Courts have recognized the "limited probative value" of such check-the-box forms, especially when they lack well-supported explanatory notes. *See, e.g., McGlothlen v. Astrue*, 2012 WL 3647411, *6 (E.D.N.C.); *Shelton v. Colvin*, 2015 WL 1276903, *13 fn.6 (W.D.Va.); *Leonard v. Astrue*, 2012 WL 4404508, *4 (W.D.Va.); *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("check-the-box assessments without explanatory comments are not entitled to great weight"). Here, the ALJ stated specific legitimate reasons for giving them "little weight."

The next statement is a check-the-box form indicating that Dr. Johnson agreed with the non-treating psychologist's report. (Ex. 6F). That report has many inconsistencies. Contrary to her repeated representations to her physical therapists that she could sit for 2 hours with minimal breaks, claimant told this psychologist that she could sit only 30 minutes. (AR 274). Although the claimant's own surgeon and physical therapists indicated that claimant had improved greatly and could perform light work by late 2006, this psychologist indicated in his "vocational opinion" that "there has been no significant improvement in the months, nearly two years, since her injuries." (AR 276). This report was not generated in the course of treatment.[18] The ALJ indicated that Brabham had relied uncritically on claimant's subjective allegations, which were inconsistent with her reports to her physical therapists and surgeon. The ALJ appropriately gave it little weight. (AR 563). To the extent Drs. Johnson and Richardson later filled out check-the-box forms (AR 280, 291) indicating they agreed with such report, the ALJ further indicated that these form opinions were "also given little weight for the reasons set forth above that Dr. Brabham's opinion was given little weight." (AR 564-565).[19] The ALJ further observed that Dr. Richardson's opinion that claimant would continue to need medication for depression and anxiety was not inconsistent with the RFC. (AR 565).

The third statement by Dr. Johnson is another check-the-box form furnished by counsel in 2013, where Dr. Johnson marked that claimant would be absent from work "more than 4 days per month" and need to take breaks "on an unscheduled and unpredictable basis." (Ex. 27F/3). The ALJ appropriately gave this little weight. The ALJ explained that Dr. Johnson's three

---

[18] Brabham's report also mischaracterizes that claimant "was injured when she lifted a 5 gallon of paint (sic), a task she had performed numerous times without incident." As already noted, the claimant has indicated several times that she actually attempted to catch a falling bucket of paint. (AR 271).

[19] Only two progress notes by Dr. Richardson are in the record and both were after the date last insured. Dr. Richardson's check-the-box form added yet another layer, by asking if he agreed with one of Dr. Johnson's questionnaires. (AR 291).

statements were inconsistent 1) with the treatment record and the surgeon's own treatment notes; 2) with the physical therapy records, which showed additional improvement after the FCE; and 3) with the claimant's reported activities. (AR 564). The ALJ observed that the "records reflect that the surgery was generally successful in relieving the symptoms" and pointed to specific progress notes of Dr. Johnson indicating the fusion was "solidly healed" and that claimant was continuing to do well. (AR 561). The ALJ discussed at significant length the therapy notes and the October 2006 FCE, which Dr. Johnson had relied on when he opined in 2007 that claimant was capable of light work. (*Id.*). The Commissioner correctly asserts that the ALJ fully considered, properly weighed, and adequately explained the conflicting evidence. It is the Commissioner who must ultimately determine whether a claimant is disabled, and not the claimant's physician.

To the extent the claimant argues that the ALJ erred "in relying upon presumed facts outside of the record" to support his findings regarding the weight to which Dr. Johnson's opinions were entitled, claimant is complaining about a paragraph where the ALJ accurately observed that Dr. Johnson had written that claimant had demanded "more restrictions" from him. (AR 564, referring to AR 309). This documented fact is not "outside the record." The ALJ noted the general possibility that a doctor "may express an opinion in an effort to assist a patient with whom he or she sympathizes." (AR 564). Claimant significantly over-states her argument by urging that it is "improper for an ALJ to assume that doctors routinely lie in order to help their patients collect disability benefits," as the ALJ certainly did <u>not</u> state this.[20] The ALJ provided a legitimate and objective basis for giving Dr. Johnson's 2013 letter less weight. The ALJ validly

---

[20] Claimant relies on a district court case from another circuit, which is not binding here. Moreover, that circuit has held that an ALJ may reject a physician's statement where it "varied from [that physician's] own treatment notes" and "was obtained solely for the purposes of the administrative hearing." *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996), *cert. denied*, 519 U.S. 1113 (1997) (citing *Burkhart v. Bowen*, 856 F.2d 1335, 1339 (9th Cir. 1988).

pointed out that Dr. Johnson had not seen the claimant since 2007 and yet wrote a 2013 letter (which was inconsistent with his 2007 opinion and which was based on the same information that he relied on in 2007). *See Hailey v. Comm'r,* 284 Fed.Appx. 100, 104 (4th Cir. 2008) ("the ALJ has the responsibility to weigh conflicting evidence"). This provides substantial evidence to support the ALJ's finding.

The claimant points to a footnote in Magistrate West's R&R recommending that the ALJ "explore" the issue of the bending restriction suggested by Dr. Johnson in 2007. The ALJ observed in his 2013 decision that the claimant "reports her ability to squat, bend, kneel, and climb stairs is limited, although she did not specify to what extent." (AR 560). Significantly, the ALJ also observed that, according to the physical therapy notes, the claimant's therapist indicated the claimant's "trunk strength was within normal limits" and that she had only "minimal limitation" of range of motion ("ROM"). (AR 561). The progress notes from October 9, 2006 also indicated she "can lift 10 lbs. floor to waist 10 times while maintaining good body mechanics." (AR 769). The November 8, 2006 notes indicate that "overall patient has made excellent progress with significant improvement in trunk ROM & strength." (AR 810). Her discharge summary specifically indicates that her "trunk strength is within normal limits – all planes," that she was "able to full squat and return to standing, 10 times," that she could "lift ten lbs. floor to waist 10 times," and that her "trunk flexion" was "normal" (AR 809). Such evidence directly concerns her ability to "bend."

The ALJ limited the claimant to sedentary work with "no crawling or climbing." The ALJ sufficiently indicated that claimant should avoid activities that put excessive strain on her lower back, such as lifting more than 10 lbs., crawling, climbing, or sitting for prolonged periods without the opportunity to stand up or take normal breaks. *See e.g., Stone v. Comm'r*, 544

Fed.Appx. 839, 843 (11th Cir. 2013) (affirming ALJ's decision, and observing that postural limitations, including only occasionally climbing and crawling, "implicitly took into account" any restriction against bending). Moreover, the ALJ and counsel both questioned the VE at significant length about the physical requirements of various sedentary jobs. For the "table work" jobs, the VE testified that "it's basically someone that's working at a table or bench height and they're basically moving a product." (AR 656 explaining "the tile moves down and the person simply directs it where it needs to go" and that it would involve "hardly any" twisting). For the "weigher" jobs, then VE testified that the person would enter and record the weight of products on a computer or calculator (without lifting the product). Notably, the jobs described by the VE at the sedentary level did not require repetitive "bending." (AR 656-659). The ALJ's RFC decision is supported by substantial evidence.

### Issue 6: Whether the ALJ complied with the requirements of SSR 00-4p with regard to the "low stress setting" limitation included in the hypothetical question

At the 2013 hearing, the ALJ posed a hypothetical question that incorporated a limitation to "work in a low stress setting." (AR 584-85). In response, the VE testified that a person limited to "low stress" work could perform a range of sedentary jobs. (*Id*.). The ALJ expressly asked the VE whether this testimony was consistent with the DOT, and the VE testified that it was consistent with the DOT. (*Id*.). The ALJ's duty is generally satisfied if he asks the VE whether the testimony is consistent with the DOT. *See Martin v. Comm'r*, 170 Fed.Appx. 369, 374 (6th Cir. 2006). Here, the ALJ met his responsibility to inquire about any conflict.

Claimant now argues that the DOT has "no provision for low stress work settings."(AR 25 at 29-30, citing AR 41, 2009 Hrg. Tr.). Claimant cites SSR 00-4p which requires an ALJ to ask the VE for a reasonable explanation for any "apparent unresolved conflict" between the VE's testimony and the DOT. SSR 00–4P, 2000 WL 1898704 (Dec. 4, 2000).

2:13-cv-03607-TMC    Date Filed 07/31/15    Entry Number 35    Page 22 of 24

The Commissioner points out that "there was neither an actual conflict nor an apparent conflict between the VE's testimony and the DOT." (DE# 27 at 19). The Commissioner explains that there is no "conflict" within the meaning of SSR 00-4p where the VE allows for a limitation that the DOT does not address. "Evidence from VEs ... can include information not listed in the DOT." SSR 00-4p; s*ee also, e.g., Epperson v. Astrue*, 2012 WL 3862717, *4 (E.D.N.C.) (ALJ limited claimant to "low stress work"). VEs "have, through training and experience in vocational counseling or placement, an up-to-date knowledge of job requirements, occupational characteristics and working conditions, and a familiarity with the personal attributes and skills necessary to function in various jobs." *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

The Commissioner explains that "there is an enormous difference between (1) a "conflict" between VE evidence and the DOT and (2) VE evidence concerning a limitation that the DOT does not address." Courts have held that "a VE can provide more detailed information about jobs or occupations than the DOT without presenting a conflict." *Harrell v. Astrue*, 2008 WL 858771, *15 (E.D.N.C.) ("The court disagrees with plaintiff's contention that there are apparent unresolved conflicts that triggered a duty to inquire."), *citing Walls v. Barnhart*, 296 F.3d 287, 292 (4th Cir. 2002). Having inquired about any conflict, the ALJ is not required to affirmatively "conduct an independent investigation into the testimony of witnesses to determine if they are correct." *Johnson v. Comm'r*, 535 Fed.Appx. 498, 508 (6th Cir. 2013) ("Although Johnson attempts to identify conflicts at this juncture, we agree with the Commissioner that they are irrelevant."); *Foushee v. Colvin*, 2014 WL 6831766, *3 (M.D.N.C.) ("Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record - indeed, to exhort the ALJ that the case is ready for decision—and later fault the

ALJ for not performing a more exhaustive investigation.") (quoting *McGlothlen*, 2012 WL 3647411, *5).

**Issues 7 & 8: Whether the ALJ's Step 5 finding is supported by substantial evidence**

Finally, claimant contends that the ALJ did not include all her limitations (as established by the record) in the hypothetical question to the VE, and thus, the ALJ erred in relying on the VE's testimony. The claimant urges that the ALJ should instead have relied on the more restrictive hypothetical questions asked by her counsel. At the 2013 hearing, counsel asked the VE to assume that a person would take "unscheduled breaks on an unpredictable basis including lying down during the course of the day several times" and would be "absent from work more than four days per month." (AR 585). These restrictions repeat the limitations found in the post-remand check-box form that counsel had submitted to Dr. D. Johnson in 2013, seven years after claimant's surgery. The VE responded those assumptions "would eliminate all jobs." (*Id.*).[21]

The Commissioner points out that the claimant's argument essentially repeats her challenge to the RFC. Because substantial evidence supports the RFC finding, the ALJ's hypothetical question based on that RFC was appropriate. The ALJ did not find the extreme restrictions suggested by counsel to be credible or supported by the evidence.

"In questioning a [VE] ... the ALJ must propound hypothetical questions … that are based upon a consideration of all relevant evidence of record on the claimant's impairment." *Thompson v. Astrue*, 442 Fed.Appx. 804, 806 fn.1 (4th Cir. 2011) (per curiam). The ALJ is afforded "great latitude in posing hypothetical questions." *Koonce v. Apfel*, 1999 WL 7864, *5 (4th Cir. 1999). The ALJ need only pose questions that accurately reflect a claimant's limitations under the evidence. *See, e.g., Watts v. Colvin*, 2014 WL 5297809, *10 (D.Md.) (rejecting

---

[21] Counsel had asked the same question at the 2009 hearing, and in a moment of levity, the VE had responded that it would be incompatible with any type of gainful activity, except "maybe for a partner at a law firm." (AR 660).

claimant's argument because it was premised on assumptions not found credible under the evidence). It was entirely proper for the ALJ to omit from the hypothetical 1) any limitations based on statements by claimant which the ALJ found to be not fully credible, 2) any limitations entitled to little weight due to a lack of medical support in the record as a whole, and 3) any limitations based on the unsupported suggestions of counsel. *See Ehrhart v. Secretary of HHS*, 969 F.2d 534, 540 (7th Cir. 1992).

The Commissioner asserts that the ALJ reasonably determined that those limitations were not supported by substantial evidence and did not include them in his RFC finding. The ALJ's finding that claimant could perform jobs that existed in significant numbers was based on vocational testimony that considered the RFC and limitations that were found credible under the evidence. Vocational expert testimony as to the existence of jobs will constitute substantial evidence in support of the ALJ's decision if it is in response to a hypothetical question based on an accurate RFC. *Walker v. Bowen*, 889 F.2d 47, 50-51 (4th Cir. 1989) (VE's testimony "must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments."); *Thompson v. Astrue*, 442 Fed.Appx. 804, 806 n.l (4th Cir. 2011) (per curiam) (same). The ALJ's finding that claimant was able to perform other work existing in significant numbers is supported by substantial evidence. To the extent the claimant asserts that the Commissioner did meet her burden at step five, the claimant provides no support for this assertion other than a conclusory statement premised on previous arguments already addressed.

### **RECOMMENDATION**

Accordingly, the Magistrate Judge **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**.

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 31, 2015
Charleston, South Carolina